UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| versus | NO. 04-017 |
| JOHN JOHNSON<br>HERBERT JONES, SR.<br>JOSEPH SMITH | SECTION "C" (6) |

## ORDER AND REASONS

Before the Court is a motion by Defendant John Johnson to sever his the capital trial from the proceedings of co-Defendants, Herbert Jones, Sr. and Joseph Smith. (Rec. Doc. 208). The Court ruled in the interim that the proceeding in Jones' case should be severed from Mr. Johnson's because the Government does not intend to seek the death penalty against Jones. (Rec. Doc. 231). With this issue moot, the Court considers only the severance of Johnson's trial from that of Smith under Fed. Cr. R. P. 14. Having considered the motion, the supporting and opposing memoranda thereto, and the law, the Court hereby GRANTS Defendant's Motion.

**I.     Background**

On January 28, 2005, the grand jury returned a five-count Second Superseding Indictment against Mr. Johnson along with the Defendants Jones and Smith. Count One charges the Defendants

1

with Conspiracy while Count Two charges the underlying substantive offense of Armed Bank Robbery Resulting in Death, in violation of 18 U.S.C. § 2113(a) and (e). These charges stemmed from a bank robbery that occurred on January 8, 2004 in Algiers, Louisiana, which resulted in the death of Sidney Zaffuto. In connection with this incident, the Second Superseding Indictment also charged Defendants under Count Three with Use of a Firearm in Furtherance of a Crime of Violence Resulting in Death in violation of 18 U.S.C. § 924(c)(1)(A). Finally, in Counts Four and Five, the Government charged Jones and Smith with additional firearms violations pursuant to 18 U.S.C. § 924(c)(1)(A).

On February 1, 2005, the Government filed a Notice of Intent to seek the death penalty against Johnson in connection with Counts Two and Three. The Notice alleges the existence of various eligibility factors along with statutory and non-statutory aggravating factors. The Government subsequently filed a similar Notice of Intent to seek the death penalty against Co-defendant Smith.

Johnson argues that a joint penalty phase with Smith would prejudice his Eighth Amendment right to an "individualized hearing" on mitigation. Specifically, Johnson contends that during a joint proceeding, a jury will unduly exaggerate his culpability when considering the significance of his past criminal conduct when compared with the alleged relatively innocuous criminal history of Smith. Additionally, Johnson alleges a risk of prejudice in the anticipated antagonistic defense by Smith with respect to blameworthiness for the bank murder. The Government rejects this theory, asserting that a joint proceeding would be both efficient and allow for greater reliability. The Government contends that there is no merit to Johnson's Eighth Amendment argument because his individualized hearing would not be imperiled, relying on the general competence of the jury.

**II.     Law and Analysis**

"If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14. A district court has wide discretion in considering a motion to sever under Rule 14. *See United States v. Posada-Rios*, 158 F.3d 832, 862 (5th Cir. 1998).

While Fed. R. Crim. P. 8 is designed to promote economy and efficiency, these objectives must be achieved "'without substantial prejudice to the right of the defendants to a fair trial.'" *Zafiro v. United States*, 506 U.S. 534, 540 (1993)(quoting *Bruton v. United States*, 391 U.S. 123, 131, n. 6 (1968)). A court should sever proceedings under Rule 14 if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, . . . " *Id*. at 539. In a capital case, moreover, the qualitative difference of the penalty compared with other criminal sanctions warrants a "greater degree of reliability when the death sentence is imposed." *Locket v. Ohio*, 438 U.S. 586, 604 (1976); *United States v. Bernard,* 299 F.3d 467, 475-476 (5th Cir. 2002).

**A.     Specific Right to Individualized Hearings**

Under the Eighth Amendment, a capital defendant is entitled to an individualized hearing to prevent the arbitrary and capricious imposition of the irrevocable punishment of the death. *See Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (plurality op.) ("[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action"); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality op.) (Stewart, J., concurring) ("Because of that qualitative difference [of the death penalty], there is a corresponding

difference in the need for reliability in the determination that death is the appropriate punishment in a specific case").

The Court finds that a joint penalty phase in this case would necessarily dilute the focus from one individual in the eyes of the jury and prejudicially blur the two defendants' arguments with respect to mitigation. To the extent that both Defendants argue the same theory of mitigation, the reasonably anticipated effect could be to undermine the integrity of the individualized hearing and be less persuasive by virtue of the repetition.

The Court rejects the Government's contention that a joint trial would enable a more accurate assessment of relative culpability, allegedly because the jury would otherwise "hear only half the evidence." (Rec. Doc. 211 at 4). For purposes of assessing relative culpability, that evaluation can still be made in separate trials, without jeopardizing the right of each Defendant to individual treatment. In each trial, the circumstances of the offense will be set forth, allowing the Government and each Defendant at his trial to argue that Defendant's level of culpability vis-a-vis the Co-defendants. If either Defendant so chooses, he can also introduce evidence regarding a co-defendant to further distance himself from relative culpability (*e.g.* at Smith's trial/penalty phase, he can introduce evidence of Co-defendant Johnson's arguably more serious criminal history). Therefore, each jury would have the full facts in front of it, without risk of prejudice due to antagonistic defenses. *See* Discussion, *infra*.

### B. Risk of Antagonistic Defenses

The risk of prejudice further arises under these circumstances primarily for two additional reasons: First, both Defendants may wish to shift the blame for the offense to the other. It is unclear to the Court which Defendant is alleged to be the actual triggerman; or whether, in an exchange of

gunfire, the fatal bullet cannot be attributed to one defendant in particular. In the case of the former scenario, the defendant who is not the triggerman will presumably argue lesser culpability and point the finger at the triggerman. In the latter scenario, both could be pointing fingers at each other. Additionally, it appears that Smith may take the position that he was a late-comer to the offense and merely followed instructions, which would further distance him from an arguably more culpable Johnson. The Court finds that the risk of such competing defenses on such a core aspect of the case militates in favor of severance. *See United States v. Daniels*, 281 F.3d 168, 176 (5th Cir. 2002) (allowing for severance when the core of the defenses are diametrically opposed such that "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant") (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. Unit B 1981).

As a second rationale for severance, the Court finds that the jury will tend to attribute an aggravating factor for one defendant based on what a co-defendant might argue as a mitigating factor. Here, the Government has alleged for both defendants a prior felony conviction as an aggravating factor. However, it appears from Defendant Johnson's motion for severance that his criminal record is far more recent than that of Co-defendant Smith. The record indicates that Co-defendant Smith has already argued relative lack of culpability in part because of his more distant prior criminal history.[1] In light of the risk of the jury's improperly balancing aggravating and mitigating factors

---

[1] The Government is critical of the defense for failing to "identify specific defenses or mitigation evidence" which call for a severance. (Rec. Doc. 234 at 5). The defense has in fact cited two indications that such a defense is in the offing: (1) the argument by Smith's counsel before the Department of Justice that his client was a latecomer to the offense and only did what he was told and (2) that Smith has a less serious criminal history than that of Johnson. (*See* Rec. Doc. 208 at 7). It is unknowable at this point what other possible conflicts may arise at a joint penalty phase. While the Government must give notice of its various alleged aggravating factor, a co-defendant is not so
(continued...)

between the co-defendants, the Court is persuaded by the reasoning in *United States v. Green*, 324 F. Supp. 2d 311 (D.Mass.2004).[2] In that case, the district court recognized the potential risk of the "halo effect" where the jury transposes a greater degree of culpability onto one defendant because of the other defendant's relatively untarnished background. *See Green*, 324 F.Supp. 2d at 319 n.14. In *Green*, the district court granted a severance over concerns the jury would exaggerate the culpability of a defendant with a stable background in comparison to a relatively harsh background suffered by a co-defendant:

> The defense argues, quite forcefully, that in this case an aggravating fact for one defendant is a mitigating fact for another. Darryl Green suggests that he may argue in mitigation that prior to the present offense, he had a stable and loving family with parents, a brother and sisters who describe his otherwise exemplary life. Morris, on the other hand, may argue in mitigation that he has suffered throughout his life from childhood abuse or neglect and has been exposed to horrible violence and a lack of opportunities in his community, which made him vulnerable to the influence of someone older, like Darryl Green. In fact, virtually every argument for mitigation made by one defendant will be in effect an argument against mitigation as to the other defendant if that defendant cannot claim the same attribute.

*Green*, 324 F.Supp. 2d at 325-326.

A risk of such unfair comparisons potentially exists should one defendant argue, as in *Green*, a stable and loving home-life as a mitigating factor, while another argues the opposite - a turbulent and abusive home-life. More important, the same rationale operates with respect to the comparative

---

[1](...continued)
obligated. Hence it would not necessarily be known until the penalty phase began whether other conflicts will arise, which is another reason to sever now in an abundance of caution.

[2] While the Government indicates that the *Green* decision has been appealed (Rec. Doc. 211 at 7-8 n.1), this appears to be incorrect. An entirely separate ruling by the same judge in the same case was successfully appealed though not the severance issue. *See United States v. Green*, 407 F.3d 434 (1st Cir. 2005).

weight of each Defendant's criminal history given Smith's indication of how he may use the Co-Defendants' criminal records. The remote criminal record of Smith would cast Johnson in the role of "hardened" or "incorrigible" criminal in the eyes of the jury. This would be exacerbated by Smith's claim to be a late-comer to the offense.

The *Green* rationale is also relevant to another potential conflict in the event one defendant elects to testify and express remorse, while the other asserts his right to remain silent at the penalty phase. While the jury could be instructed not to take the invocation to silence against the non-testifying defendant, it would be difficult not to engage in comparative consideration in regard to the remorseful defendant. To the extent that either defendant offers a fact in mitigation, it can serve as aggravation to the other if he lacks that same circumstance. Additionally, since this is largely a penalty phase case, the possible conflicts may also arise in jury selection and the exercise of peremptory challenges.

Finally, with respect to any of these potential conflicts and the risk of antagonistic defenses, the Court finds Johnson's argument persuasive that he might have to face Smith's counsel in the guise of a second prosecutor. Any of these potential risks would be greatly exaggerated if the jury were confronted not only with the suggestion that Johnson were comparatively more culpable, say, because of a more extensive criminal record, but also with active advocacy from his co-defendant's counsel to that effect.

### C. Judicial Economy

As to the Government's concerns that severed proceedings would be an inefficient use of judicial resources, the Court finds that judicial economy will not be seriously impacted. The indictment, while charging multiple counts, involves just one finite event of short duration. The

7

defendants do not appear to be intensely contesting the guilt phase liability. Having two trials therefore amounts to only an incremental burden on the Government. The relatively short trials in both instances suggest that the costs of an additional proceeding will not be excessive or oppressive, especially given the paramount constitutional concerns discussed above. This relative simplicity of the case can be distinguished from cases cited by the Government. *See*, *e.g.*, *United States v. Tipton*, 90 F.3d 381 (4th Cir. 1996)(defendants charged in a 33-count indictment alleging a number of federal crimes involving several defendants, including seven capital murders, which arose from their concerted drug-trafficking activities over a period of a several years); *United States v. Taylor*, 293 F.Supp. 2d 884 (N.D. Ind. 2003)(trial estimated to last 6-7 weeks, not including jury selection). Accordingly, any additional costs or burdens of two proceedings is outweighed by the risk of prejudice to Johnson.

**III.   Conclusion**

In light of the foregoing discussion, IT IS ORDERED that Johnson's and Smith's trials should be SEVERED under Rule 14.

New Orleans, Louisiana, this 15th day of June, 2005.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE